Richard L. GRUENDYKE

v.

The UNITED STATES.

No. 514–78.

United States Court of Claims.

Jan. 14, 1981.

Paul A. Kiefer, Washington, D. C., attorney of record, for plaintiff.

Louis R. Davis, with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before COWEN, Senior Judge, KUNZIG and SMITH, Judges.

KUNZIG, Judge:

We are again confronted with a suit by a former military officer who, as a result of being passed over for promotion, allegedly on the basis of defective officer effectiveness reports (OERs), was released from active duty. The question presented in this case is whether the action of the Air Force Board for Correction of Military Records (Corrections Board) denying plaintiff's relief was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff petitions this court for back pay, correction of his records, and reinstatement to active duty. We sustain the Corrections Board's action and deny plaintiff's request for relief.

In this military pay case, plaintiff, formerly an officer in the Regular United States Air Force, contests his removal from military duty. Plaintiff was serving in the temporary grade of major when he was involuntarily released from the service because he had twice been passed over for promotion to the permanent grade of major.[1] With approximately 15 years of service, plaintiff was honorably discharged on June 30, 1977.

Plaintiff was first passed over for promotion to the permanent grade of major by an August 18, 1975 selection board. Another board met on November 8, 1976, and he was again reconsidered but not selected. Plaintiff's records before both the 1975 and 1976 selection boards contained three OERs covering the periods (1) March 1, 1972–February 28, 1973; (2) March 1, 1973–February 8, 1974; and (3) February 9, 1974–February 8, 1975: all three carried an overall evaluation of 8–3 (outstanding officer—consider advancement ahead of contemporaries).[2]

On September 22, 1977, plaintiff moved to challenge these three OERs by filing an application with the Corrections Board requesting that the three OERs be voided because they were inaccurate and not truly representative of his military performance. In his application, plaintiff contended:

(1) The OER for period March 1, 1972 through February 28, 1973 was improperly downgraded from a 9–4 to an 8–3 as a result of improper influence on the rating official;

(2) The OER for the period March 1, 1973 through February 8, 1974 is non-objective in that it does not accurately re-

1. A Regular Air Force officer who is not selected by two selection boards for permanent rank is involuntarily separated from active duty: 10 U.S.C. §§ 8299(h), 8303(d) (1976).

2. Air Force OERs are based on: (1) overall evaluation ratings graded on a scale of 1 through 9, the latter number being the highest, and (2) promotion potential grades on a scale of 1 through 4, with 4 denoting the best promotion potential. Thus, a 9–4 is the highest possible overall evaluation rating and reads: "Absolutely Superior"—"Outstanding growth potential based on demonstrated performance. Promote well ahead of contemporaries." An overall evaluation rating of 8–3 reads: "Outstanding. Almost never equaled"—"Demonstrates capability for increased responsibility. Consider advancement ahead of contemporaries."

flect applicant's job performance and promotion potential; and

(3) The basis for writing the OER for the period February 9, 1974 through February 8, 1975 admittedly was taken from other OERs in violation of AFR 36–10, para. 10–5(c).

Plaintiff's application was denied without a hearing on June 30, 1978. This suit followed.

In this action, now before us on plaintiff's motion for summary judgment, plaintiff challenges the Corrections Board's decision on the grounds that its decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff argues that his passovers by the 1975 and 1976 selection boards were unjust and, therefore, his removal predicated on these two passovers was illegal.

■ It is well established in military passover cases that a plaintiff requesting back pay due to a separation or relief from active duty must show *both* that (1) there was a material legal error or an injustice in the proceedings of the Corrections Board, or other entity within the military department, which led to the action against him, *and* (2) that there is an adequate nexus between the error or injustice and the adverse action (*e. g.*, passover and nonselection for promotion). *Hary v. United States*, 223 Ct.Cl. ——, 618 F.2d 704 (1980); *Sanders v. United States*, 219 Ct.Cl. ——, 594 F.2d 804 (1979). *See also Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975). In reviewing passover cases, we are mindful that there is a strong presumption of regularity attaching to the actions of public officers, including administrators of the military. *Sanders v. United States, supra*, 219 Ct.Cl. at ——, 594 F.2d at 813. Because we find that the Corrections Board's decision in failing to void the three contested

OERs was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law, it is not necessary for us to reach the nexus requirement.[3]

■ Plaintiff's initial allegation concerns the OER dated March 1, 1972 through February 28, 1973, which he contends was downgraded from a 9–4 to an 8–3 as the result of improper "command influence" on the rating officer. In a leading military passover case, *Skinner v. United States*, 219 Ct.Cl. ——, 594 F.2d 824 (1979), we stated that the purpose of officer evaluations would be substantially thwarted if improper "command influence" by superiors was allowed to bear on the rater's decision. The evidence must clearly demonstrate that the rater's prerogatives were violated by undue pressure or coercion. Plaintiff has failed to make such a demonstration.

This OER was prepared by Lieutenant Colonel Scheid and indorsed by Colonel Barrett. The principal evidence relied upon by plaintiff to show that the rating was not objective was (1) a statement made by Lieutenant Colonel Scheid to plaintiff that on the OER he submitted for this period, he rated plaintiff a 9–4, and that Colonel Barrett instructed him to modify the rating to an 8–3; (2) a letter written by plaintiff in which he confronted Colonel Barrett with Lieutenant Colonel Scheid's statement; and (3) a response to that letter in which Colonel Barrett acknowledged the truth of Lieutenant Colonel Scheid's statement. The evidence does not support plaintiff's contention that Colonel Barrett exerted improper "command influence" over Lieutenant Colonel Scheid's rating of plaintiff. Unlike in *Skinner v. United States, supra*, where the court relied upon evidence consisting of *admissions* by the rating and indorsing officials in the rating chain that plaintiff would have received a higher rating but for im-

---

**3.** Should a Corrections Board decide that an OER *is* defective, the next line of inquiry is whether the selection board's passovers were or may have been influenced by the defective OERs. The fundamental question underlying the issue of nexus is whether the officer's record before the selection boards (including the OER(s) found to be defective) still portrayed

his service career on a "fair and equitable basis" as required by statute. 10 U.S.C. §§ 3442(c), 8442(c) (1976). *See Hary v. United States, supra*, 223 Ct.Cl. at ——, 618 F.2d at 709. Harmless error unrelated to an officer's passover, does not require judicial relief. *Riley v. United States*, 221 Ct.Cl. ——, ——, 608 F.2d 441, 443 (1979).

proper "command influence," in the instant matter, the record merely indicates that Colonel Barrett agreed with the description of the circumstances as provided by Lieutenant Colonel Scheid.

We concur with the Corrections Board that there are various circumstances in which Colonel Barrett's instructions to Lieutenant Colonel Scheid to change the OER to an 8–3 would have been considered acceptable.[4] We find no improper "command influence" in the case at bar.

■ Plaintiff contests the second OER, covering the period March 1, 1973 through February 8, 1974, on the grounds that this OER was initially submitted as a 7–3 and subsequently upgraded to a 8–3. By improving the rating, plaintiff argues, he was precluded from taking the proper administrative steps to obtain a 9–4, the highest rating possible.[5] We find this contention meritless.

First, there is no credible evidence supporting plaintiff's assertion that he had a realistic opportunity to obtain a higher rating. This being the case, we are at a loss to see how plaintiff's receipt of a higher rating than the one he originally received somehow prejudiced him in his efforts to obtain a promotion. Moreover, we note that plaintiff is incorrect in his assertion that the upgrading foreclosed him from thereafter seeking a higher rating. Plaintiff ignores the fact that he did indeed challenge, although unsuccessfully, the OER before the Corrections Board—and that he now has the right to challenge the denial of a higher rating by bringing an action in this court.

■ The third and final OER challenged by plaintiff is for the period February 9, 1974 through February 8, 1975. This OER is contested on the grounds that the rater, Colonel Collins, used key words and phrases from prior OERs in writing the OER for this period. Plaintiff alleges legal error in that AFR 36–10, para. 10–5(c) states, in part, "... Evaluators are prohibited from using or considering evaluation reports rendered in previous reporting periods." Plaintiff argues that the rater's use of key words and phrases taken from prior OERs runs afoul of the prohibitory language of AFR 36–10, para. 10–5(c). We cannot subscribe to such a view.

It is no surprise that senior military officers called upon to evaluate a subordinate, harken back to golden phrases used on prior occasions. So long as these key words and phrases are used in a dictionary sense and not as a yardstick for reviewing the subordinate's performance, we find no violation of the regulation.

■ Based on our analysis of the evidence, we reject plaintiff's challenges to the three OERs. We find no legal error or injustice in the Corrections Board's refusal to remove these OERs.

All other arguments raised by plaintiff, though not directly addressed by this opinion, have been examined and found to be without merit.

After granting defendant three enlargements of time, on April 23, 1980, the court denied the Government's motion for leave to file out of time a cross-motion for summary judgment and a response to plaintiff's motion for summary judgment. The court directed that the case proceed on plaintiff's motion without written submissions from defendant. Similarly, on May 2, 1980, the court denied the defendant's motion for reconsideration of its Order of April 23, 1980 and the case proceeded to oral argument as directed by the court.

---

4. For example, did Colonel Barrett return the OER for additional justification to support the 9–4 rating? Was it returned with a comment to the effect "you've written an 8–3 report but marked it a 9–4?" Did Colonel Barrett return the OER with a statement that he could not support anything more than an 8–3 based on the information provided?

5. AFR 31–11 sets Air Force policy and rules for correcting officer and airman evaluation reports once they have been made a matter of record. This regulation gives a means by which servicemen or responsible officials can appeal to correct such injustices or errors.

Although the Government has not cross-motioned for summary judgment, on consideration of the record and plaintiff's submissions, and with oral argument, it is the court's conclusion, as stated in the foregoing, that plaintiff is not entitled to prevail. Accordingly, plaintiff's motion for summary judgment is denied. Pursuant to Rule 102(b)(1), his petition is dismissed.

COWEN, Senior Judge, concurs in the result.